# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:09-cv-158-RJC

| | |
|---|---|
| DARRYL ANDREW GIVENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ANGELO DEMAIORIBUS, ) | |
| C.N. DENTON, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment (Doc. No. 16). In accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the necessity of filing a response to such motion and of the manner in which evidence could be submitted to the Court. See (Doc. No. 19). On February 17, 2010, Plaintiff filed his Response. (Doc. No. 24). Having carefully considered the motion, exhibits, and briefs in support, opposition, and reply, the Court enters the following findings, conclusions, and Order granting summary judgment.

I.  BACKGROUND

In this action brought under 42 U.S.C. § 1983, Plaintiff alleges that Defendants used excessive force in effectuating his arrest on October 10, 2008 after he sold crack cocaine to an undercover officer with the Charlotte Mecklenburg Police Department ("CMPD").

On October 10, 2008, at approximately 11:30 p.m., Officer Demaioribus (36 years old, five feet ten inches, and 230 pounds), and Officer Denton (34 years old, five foot nine inches, and 175 pounds), were on duty, assigned to an undercover narcotics operation, and riding as a two-man unit in the Metro Division. Both officers were participating in the undercover operation near the 1600 block of LaSalle Street in Charlotte, North Carolina.

At that time, the officers observed Plaintiff (54 years old, six feet two inches tall, weighing 170 pounds), walking on LaSalle Street. (Doc. Nos. 16-3: Affidavit of Demaioribus at

1, 2; 16-4: Affidavit of Denton at 1; 16-5: Affidavit of Polly Raymer at 3). Plaintiff had just sold crack cocaine to an undercover CMPD officer. (Doc. No. 16-6: Certified Copy of Guilty Plea at 1). Undercover CMPD Officer Gant informed Officers Demaioribus and Denton through an open cell phone line that he had finished the purchase of crack cocaine from Plaintiff, and told them the direction in which Plaintiff was walking. When Officers Demaioribus and Denton received that communication, they located Plaintiff and stopped approximately fifteen feet from him, blocking a lane of traffic on LaSalle Street with their patrol car. Officers Demaioribus and Denton approached Plaintiff with the intent to arrest him for the crack cocaine sale. (Doc. Nos. 16-3: Aff. of Demaioribus; 16-4: Aff. of Denton).

Reading all the materials of record in a light most favorable to Plaintiff, Plaintiff contends that Officer Demaioribus picked him up from a standing position and threw him to the cement pavement, dislocating his right shoulder. See (Doc. Nos. 1: Complaint; 4: "Supplemental Complaint" at ¶ 1). Plaintiff further contends that when he asked Officer Demaioribus why he had done that, the officer responded that it was "procedure." Plaintiff states that the officer then yanked Plaintiff off of the sidewalk, handcuffed him, and threw him into the police car. (Doc. No. 1: Complaint).

In what is termed his Supplemental Complaint, Plaintiff further states that the handcuffing process involved "extended arm raising," in which Officer Denton participated, and that he was thrown into the police car onto his shoulder. (Doc. No. 4: Supplemental Complaint). Plaintiff alleges that Officer Demaioribus drove Plaintiff around the community before taking him to jail, disregarding Plaintiff's complaints about his injured shoulder. (Doc. No. 1: Complaint). In his Supplemental Complaint, however, Plaintiff does not mention being driven around the community, but does state that he was driven behind a Food Lion store where both officers repeatedly pulled on his right arm. (Doc. No. 4: Supplemental Complaint). Plaintiff contends that he was then transferred to the custody of different officers to be taken to the jail, but he does not allege any improper use of force by the officers who drove him to the jail.

Defendants' evidence of what occurred differs substantially from Plaintiff's version of events. Defendants report a routine arrest in which nothing unusual occurred. They contend that they approached Plaintiff, one on each side. According to Defendants, Plaintiff did not struggle or attempt to flee, Defendants never placed him on the ground, and each officer took an arm and placed handcuffs on Plaintiff with his hands behind his back while he was upright. Defendants contend that they then searched Plaintiff and placed him in the police car without incident. Defendants state that they then took Plaintiff to a parking lot in front of a Food Lion so that Plaintiff could be transferred to another police car and taken to the jail. (Doc. Nos. 16-3: Aff. of Demaioribus at 2, 3; 16-4: Aff. of Denton at 2, 3).

The Defendant officers attest that, while in their presence, Plaintiff never complained of pain or having a shoulder injury and, if he had complained of an injury due to the arrest, the officers would have been required by CMPD policy to contact a supervisor and complete an Investigative Statement Form. (Doc. Nos. 16-3: Aff. of Demaioribus at 3; 16-4: Aff. of Denton at 3; 16-7: CMPD Directive 600-019 at 4, 5). Plaintiff was taken to jail by CMPD Officers Tisdale and Pittman, and Officers Demaioribus and Denton then returned to continue in the undercover narcotics operation. Neither arresting officer had first-hand knowledge of what transpired when Plaintiff went to the jail, because they did not go to the jail with Plaintiff. (Doc. Nos. 16-3: Aff. of Demaioribus at 3; 16-4: Aff. of Denton at 3). Three months passed before Plaintiff filed a grievance with the CMPD Internal Affairs Bureau in January 2009, alleging he was injured by officers Demaioribus and Denton.

While being processed by the jail, Plaintiff complained to jail personnel of an injury. The jail would not accept Plaintiff until he was first taken to the hospital. (Doc. No. 1: Complaint). Sergeant Thornton of the CMPD was notified that Plaintiff was not being accepted at the jail and needed to be transported to the hospital. Sergeant Thornton does not recall being told that the person being transported was claiming an injury caused by CMPD officers and avers that he would have personally gone to the hospital if there were allegations that an officer

3

had caused injury. (Doc. No. 16-8: Affidavit of Thornton at 2).

The Court has considered what transpired when Plaintiff was presented at the hospital by reviewing in camera Plaintiff's medical records, which were sealed due to medical privacy concerns. The Court will recite relevant portions of the records, inasmuch as they are probative of Plaintiff's excessive force claim.[1] Relevant to this action, the records indicate that Plaintiff's complaint was that he "Fell (Tackled by police. Shoulder struck ground.). (prison). Patient is experiencing moderate pain. Patient denies injury to head or neck. No other injury."

Upon physical exam of such complaint, the medical records reveal as follows:

> Right acromio-clavicular joint: moderate tenderness and mild swelling and deformity consistent with a disruption of acromio-clavicular ligaments. No deformity consistent with shoulder dislocation. Shoulder otherwise negative. Mildly decreased range of motion right shoulder. Extremities otherwise negative.

(Doc. No. 17: Medical Records at 4). A review of the x-rays by hospital staff indicated no fracture or dislocation, but a separation of the right AC joint. (Id. at 5). Plaintiff was prescribed and provided 500 mg tablets of Naproxen for pain, given a sling, and advised to follow up with an orthopaedist. (Id.) In the instructions accompanying discharge, the hospital described the injury as a sprain to the A-C joint. Viewed in a light most favorable to Plaintiff, the medical evidence indicates that Plaintiff suffered a shoulder sprain.

After being discharged from the emergency department of the hospital after the evaluation on October 11, 2008, Plaintiff was transported back to the jail and, by 11:00 a.m., had been processed into the jail population. (Doc. No. 16-1 at 6). At that time, he was charged with possession with intent to sell and deliver cocaine and the sale and delivery of cocaine, and he was later charged with being a habitual felon. (Doc. No. 16-6 at 5-6).

On November 4, 2008, Plaintiff wrote a letter to CMPD complaining about his arrest. He could not identify the officer but complained that his leg was "bumped" by a police car and that he was then thrown to the ground by an officer, injuring his shoulder. The Court has

---

[1] A review of the medical evidence reveals that it has been submitted in evidentiary form as it is supported by affidavit as provided in Local Civil Rule 45.1.

reviewed the medical records from Plaintiff's admission to the emergency room on the night in question, and no mention is made of any leg injury or being struck by a car. Indeed, other than the shoulder issue, hospital personnel specifically noted "No other injury." Also, in this letter Plaintiff did not mention being "driven around the community" or having his arms pulled by officers. (Doc. No. 16-9 at 4). Indeed, no mention is made in the medical records that Plaintiff complained to hospital staff of anyone pulling his arms.

On January 15, 2009, Plaintiff wrote a second letter to CMPD, in which he identifies the specific officers involved in the alleged assault. In that letter, Plaintiff states that either Officer Demaioribus or Officer Denton threw him to the pavement. (Id. at 5). Based on that letter, the CMPD opened an internal investigation to address Plaintiff's complaint with the identified officers. Sergeant Dozier of the Internal Affairs Bureau interviewed Plaintiff at the jail on January 30, 2009. Plaintiff stated that he and another man were walking down the street when a police car almost hit him and two officers jumped out of the car. An officer with glasses threw him to the ground, and Plaintiff injured his shoulder in the fall. The officers then drove behind a Food Lion, but nothing happened at that location. Plaintiff claimed he had a dislocated shoulder as a result of the force used by the officers. The officers were also interviewed, and the CMPD internal investigation concluded with a finding that Plaintiff's complaint against the officers was "unfounded." (Id. at 2).[2]

On March 23, 2009, Plaintiff, represented by counsel, pled guilty pursuant to a plea agreement to Sale of Cocaine and Possession with Intent to Sell or Deliver Cocaine. In exchange for such plea, the Habitual Felon and Deliver Cocaine charges were dismissed by the State of North Carolina. Plaintiff was sentenced to a term of 23 - 28 months. (Doc. No. 16-6 at

---

[2] The conclusion of the IA investigation has been recited for the limited purpose of providing a complete chronology; the conclusions drawn by such internal investigation have no weight in this civil action and have not been considered in determining whether summary judgment is appropriate.

1, 6). During the pendency of this action, Plaintiff served such sentence and was released.[3]

In his Response, (Doc. No 24), Plaintiff avers that he was "slammed into the cement" by Officer Demaioribus and was subject to "excessive arm raising" by Officer Denton. (Id. at 2). Plaintiff has submitted the affidavit of Peggy A. Baker, his girlfriend, who avers that before October 10, 2008, Plaintiff's shoulder was not separated and that on October 12, 2008, Plaintiff called her and told her that a "police officer picked him up into the air and slammed him onto a cement side walk." (Id. at 7). Plaintiff has also submitted the affidavit of Isaiah Sadler, who avers that he was walking with Plaintiff when "a police officer [got] out of his vehicle and picked Darryl Givens up in the air and slammed him onto the cement sidewalk." (Id. at 8). Finally, Plaintiff has submitted the affidavit of Darrica McDowell, his daughter, who avers that Plaintiff had no preexisting injury to his shoulder and that Plaintiff called her on October 12, 2008, and told her that a "police officer had thrown him to the cement causing him to have a shoulder injury . . . ." (Id. at 9).

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[3] The NCDOC sent a letter to the court stating that Plaintiff was released on October 3, 2010.

demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The Court notes that between the time when Defendants' Motion for Summary Judgment was briefed and when the Court took up the motion for consideration, Rule 56 was amended. While the standard for granting summary judgment was unchanged by the 2010 amendments, Rule 56 was amended in a manner that made clear that district courts are no longer required to search the record for evidence relevant to the motion. As the Court of Appeals for the Fourth Circuit held:

> Because the Supreme Court has not "specifie[d] otherwise," we must apply the amendments retroactively unless we determine that doing so "would be infeasible or work an injustice." Fed.R.Civ.P. 86(a)(2). Significantly, the 2010 amendments engendered considerable changes in relevant summary judgment procedures, including (as more fully explained below) changes that could affect the outcome of this appeal. See Fed.R.Civ.P. 56 advisory committee's note (clarifying that the 2010 amendments were intended "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts," while leaving "[t]he standard for granting summary judgment . . . unchanged"). In these circumstances, it would "work an injustice" to decide this matter under the 2010 version of Rule 56, and we thus decline to do so. Rather, because the 2009 amendments have no

7

> substantive effect on the issues before us, we appropriately rely on the 2009 version of Rule 56 in rendering our decision.

Sinclair v. Mobile 360, Inc., 417 Fed. Appx. 235, 240 (4th Cir. 2011). Finding that it would work an injustice to apply the new standard, this Court will apply the standard applicable to Rule 56 motions before December 2010. The Court will, therefore, consider the materials "on file" in deciding whether a "genuine issue as to any material fact" is shown, rather than confining such consideration to materials submitted with and relied on in response to the motion. See id.

    B.    Pro Se Litigants

Although district courts must liberally construe pro se complaints, courts cannot act as the pro se plaintiff's advocate and cannot develop claims that the plaintiff failed to clearly raise on the face of the Complaint. Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). As a result, even a pro se plaintiff's basis for relief "requires more than labels and conclusions . . . ." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a pro se plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Finally, on summary judgment, even a pro se plaintiff must come forward with otherwise admissible evidence upon which a reasonable jury could return a verdict in his or her favor.

**III.  DISCUSSION**

Based on all the evidence and arguments presented and a review of the allegations contained in the Complaint and "Supplemental Complaint," Plaintiff appears to contend that Defendants violated his Fourth Amendment right to be free from the use of excessive force in effectuating his arrest. Taking the evidence in a light most favorable to Plaintiff, he has presented evidence that during the course of his arrest, he was either tackled or thrown to the ground by Defendants, causing Plaintiff to suffer a shoulder sprain. There is no evidence,

however, to support Plaintiff's contention that he was hit by a police car, or that he suffered any leg injury. Although Plaintiff claims that he has a permanent injury, he has presented no medical evidence subsequent to his discharge from the emergency room to support such conclusion. Finally, it is undisputed that Plaintiff's injury was treated conservatively with Naproxen (which the Court notes is available, in smaller doses, over-the-counter with brand names like Aleve ®) and a sling.

Turning to what constitutes excessive force under the Fourth Amendment, "objective reasonableness" provides the standard for use of force in effectuating an arrest. Graham v. Connor, 490 U.S. 386 (1989); Tennessee v. Garner, 471 U.S. 1 (1985); Martin v. Gentile, 849 F.2d 863 (4th Cir. 1988). The test for excessive force requires "balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Garner, 471 U.S. at 8. The standard for measuring the reasonableness of an arrest is wholly objective; subjective bad intentions do not make a constitutional violation out of an otherwise reasonable seizure. Martin v. Gentile, 849 F.2d at 869. The "objective reasonableness test" requires careful attention to the circumstances of the particular case, including the severity of the crime, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham v. Connor, 490 U.S. at 396. As the Supreme Court observed in Graham, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. (citation omitted). Thus, the officer's actions must be viewed from the objective perspective of a reasonable officer on the scene "rather than with the 20/20 vision of hindsight." Id. As the Graham Court further observed, officers are often forced to make "split-second judgments" in circumstances that are "tense, uncertain, and rapidly evolving." Id. at 397.

In reviewing case law concerning the use of physical force or "strong hands," the amount of force allowed by the constitution is directly proportional to the threat perceived by the officer

9

to either the public or to the safety of the officer. In one case, a federal court found that throwing a person to the ground to subdue him, even if it resulted in paralysis, was not unreasonable where the officers reasonably perceived a threat to their own safety or to the safety of others. See Dyer v. Sheldon, 829 F. Supp. 1134 (D. Neb. 1993), aff'd, 21 F.3d 432 (8th Cir.), cert. denied, 513 U.S. 970 (1994). This Court has held that the use of force, including blows to the head with closed fists and flashlights, was objectively reasonable where such measures were employed to subdue a suspect who was intoxicated, physically resisting, and striking the officer with closed fists. Hoover v. McDowell Cnty., 4:95cv182-C (W.D.N.C. 1996) (Cogburn, J.), aff'd, Hoover v. McDowell Cnty., No. 96-2566, 1998 WL 398825 (4th Cir. June 15, 1998) (unpublished).

The extent of the plaintiff's injuries is a relevant factor in determining whether the application of force was reasonable. See Pressly v. Gregory, 831 F.2d 514, 518 (4th Cir. 1987). Here, as the medical records on the night of the incident indicate, Plaintiff suffered injuries amounting to a shoulder sprain. The extent of injury is not alone decisive, and it must be considered in the context of the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. More recently, the Supreme Court has addressed the impact of absence of serious injury in the context of excessive force claims in an Eighth Amendment setting. In Wilkins v. Gaddy, 130 S. Ct. 1175 (2010), the Court held as follows:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.

> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

Id. at 1178-79 (citations omitted).

The Court first considers the severity of the crime at issue. It is undisputed that on October 10, 2008, Plaintiff committed two serious felonies by possessing and selling crack cocaine to an undercover officer. Second, the Court has considered the threat posed by Plaintiff to the arresting officers. It is reasonable for officers to believe that a person engaged in selling crack cocaine on a city street at night poses a danger to their safety, as there is a strong connection between the sale of drugs and the use of guns to protect those engaged in such criminal conduct. See United States v. Grogins, 163 F.3d 795, 799 (4th Cir. 1988). Indeed, Defendants were aware of this connection. Demaiorubus stated in his affidavit: "We always approach suspects who deal drugs carefully, knowing about the real possibility of their being armed." (Doc. No. 16-3: Aff. of Demaiorubus at ¶ 9). Denton stated: "I am aware, and was that night, of the connection between guns and drugs." (Doc. No. 16-4: Aff. of Denton at ¶ 9). An officer effectuating an on-the-street arrest, at night, of a person engaged in the sale of crack cocaine could reasonably believe that the person presented an immediate threat to the safety of the officer.

The Court next considers whether Plaintiff was actively resisting arrest. There is no evidence or contention that Plaintiff offered any resistance. Defendants each state that Plaintiff "did not resist. He did not try to run." (Doc. Nos. 16-3: Aff. of Demaiorubus at ¶ 11; 16-4: Aff. of Denton at ¶ 11). While there is no evidence of resistance, the particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The Fourth Amendment does not require an arresting officer to first ask for voluntary submission to arrest where such officer is faced with an arrestee he believes to be potentially armed and dangerous and who has recently committed a serious offense. Even assuming that the officers here employed the dynamic arrest technique of bringing Plaintiff to

the ground, the force employed was well within reason, as it resulted in what the evidence has shown was a minor injury. While the extent of the injury does not, in and of itself, require a summary judgment ruling in favor of the officers, it is a factor for this Court to consider in assessing the reasonableness and extent of the use of force employed by the officers.

Here, the only objective evidence in the record is that Plaintiff suffered a sprained shoulder. The right to make an arrest carries with it the right to use the amount of force that a reasonable officer would think necessary to take the person arrested into custody. Martin v. Gentile, 849 F.2d at 869. In a post-Wilkins decision, the district court in McMillian v. LeConey, No. 5:09-cv-175-BR, 2011 WL 2144628 (E.D.N.C. May 31, 2011) held that while "the lack of serious physical injury is not, in itself, dispositive of a Fourth Amendment excessive force claim, the 'absence of [a] serious injury' nevertheless remains relevant in an excessive force inquiry." Id. at *10 (citation omitted). As another court explained,

> A de minimis use of force is insufficient to support a finding of a constitutional violation. Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000). The same is not necessarily true for de minimis injuries. That does not mean the extent of a person's injuries is irrelevant, however. The lack, or minor degree of an injury, remains relevant to determining the reasonableness of the force used. Greiner v. City of Champlin, 27 F.3d 1346, 1355 (8th Cir. 1994). This is true because the less serious the injury, the more likely the amount of force used was reasonable.

Green v. Missouri, 734 F. Supp. 2d 814, 838 (E.D. Mo. 2010). Under all the circumstances presented in this case, the amount of force used by the officers, even when viewed in the light most favorable to Plaintiff, was reasonable. Defendants are entitled to summary judgment as there is not sufficient evidence of excessive force to create a triable issue of fact.[4]

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. No. 16), is **GRANTED**; and

---

[4] Since the Court has found no constitutional violation, the court does not need to address the issue of qualified immunity. See Yacovelli v. Moeser, 324 F. Supp. 2d 760, 765 (M.D.N.C. 2004) ("Because, as previously discussed, no constitutional deprivation has been alleged, the Court need not address whether Defendants are entitled to qualified immunity.").

2. This action is **DISMISSED** with prejudice.

Signed: March 2, 2012

Robert J. Conrad, Jr.
Chief United States District Judge